## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DIVISION OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **EDGAR MOSTI,** | )( | **Civil Action No. 4:23-cv-3378** |
| | )( | **(Jury Trial)** |
| *Plaintiff,* | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **MONTGOMERY COUNTY, TEXAS, and** | )( | |
| **THE CENTER FOR THE PERFORMING** | )( | |
| **ARTS AT THE WOODLANDS,** | )( | |
| | )( | |
| *Defendants.* | )( | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES** Plaintiff EDGAR MOSTI complaining of Montgomery County, Texas, and The Center for the Performing Arts at The Woodlands and will show the Court the following:

## PRELIMINARY FACTS

1.      Edgar Mosti (hereinafter sometimes "Edgar", 54, his wife, and a friend went to enjoy a concert at the Cynthia Woods Mitchell Pavilion ("CWMP') June 9, 2023, after paying around $250.00 for tickets. Near the beginning of the concert Edgar's wife began to feel disorientated and so Edgar, his wife, and friend decided to leave. Upon leaving Montgomery County Sheriff's Office (MCSO) deputies working for the CWMP grabbed Edgar and put him in handcuffs because they did not like Edgar's criticism of their

behavior towards him, his wife, and their friend. One of the deputies then caused the handcuffed Edgar to hit the floor on his face fracturing a bone. Edgar was then kneed in the back causing pain. Edgar requested medical care, however, the deputies instead took him to the Montgomery County jail. Edgar again requested medical care at the Montgomery County jail but instead was put on suicide watch. Edgar was released the next day with no charges. As of the filing of this lawsuit, 93 days later, there has been no charges filed in the criminal courts of Montgomery County, Texas. Plaintiff's mug shot appeared in a local media outlet:



2.    Plaintiff sues under 42 USC Section 1983, and state law claims of false imprisonment, assault with offensive bodily contact, and negligence and other causes of action.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over Plaintiffs' federal claims, under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction, under 28 U.S.C. § 1367(a), to hear Plaintiffs' state law claims.

4.    Venue is proper in this Court, under 28 U.S.C. § 1391(b), because the incident at issue took place in Montgomery County, Texas, within the United States Southern District of Texas.

## PARTIES

5.    Plaintiff Edgar Mosti is a resident of Montgomery County, Texas.

6.    Defendant Montgomery County, Texas is a governmental unit existing within the U.S. Southern District of Texas and can be served with process by serving the County Judge of Montgomery County, Texas at 501 North Thompson Street, #401, Conroe, Texas, 77301.

7.    Defendant The Center for the Performing Arts at The Woodlands is a business entity controlling and responsible for the Cynthia Woods Mitchell Pavilion and can be

served with process by serving Gerald B. McDonald at 2005 Lake Robbins Drive, The Woodlands, Texas 77380.

## **ADDITIONAL FACTS**

8.    Edgar Mosti is 54 years old and has never been convicted of a felony or crime of moral turpitude. Edgar obtained a bachelors of science degree in Management Information Systems at St. Mary's University in San Antonio and has completed graduate level classes in finance and accounting at Rice University in Houston. He works for a telecommunications company.

9.    Edgar Mosti, 54, his wife, and a friend went to enjoy a concert at the Cynthia Woods Mitchell Pavilion ("CWMP') June 9, 2023, paying around $250.00 for tickets. Near the beginning of the concert Edgar's wife began to feel disorientated and so Edgar, his wife, and friend decided to leave.

10.    Upon leaving two Montgomery County Sheriff's Office (MCSO) deputies, a male and a female, working for the CWMP stopped the trio and rudely told them to take Edgar's wife and leave, at one point using profanity.

11.    Edgar criticized the deputies' behavior towards him, his wife, and their friend. Neither Edgar nor his wife and friend were intoxicated. Edgar did not assault any one nor did he commit any other crime.

12.    Due to Edgar criticizing the deputies the deputies handcuffed Edgar with his arms behind his back and stated he was being arrested. When Edgar asked why he was

being arrested the male deputy caused Edgar to go face first onto the floor causing severe damage including a broken bone and nerve damage which persists to this day. Being handcuffed Edgar could not break his fall. The male deputy had handcuffed dozens if not hundreds of individuals prior to Edgar and was aware of the dangers of leading people in handcuffs and the possibility of injury.

13.    Edgar was then kneed in the back causing pain. Edgar requested medical care, however, the deputies instead took him to the Montgomery County jail. Edgar requested medical care at the Montgomery County jail but instead was put on suicide watch.

14.    Edgar was released the next day in the afternoon with no charges nor was he given any paperwork upon his release. As of the filing of this lawsuit, 93 days later, there has been no charges filed in the criminal courts of Montgomery County, Texas. Plaintiff's mug shot appeared in a local media outlet. *Supra.*

15.    Edgar has seen several doctors after the events and the records indicate a fracture and also damage to his nose at the very least. There is also nerve damage to his nose and mouth area. Edgar experienced severe pain and pain is still present as of this day.

16.    Eric, 59, and Janet Prim, 57, had never been arrested their entire lives. They were enjoying a concert at the CWMP June 18, 2017. Janet began to exhibit symptoms of her 20-year battle with multiple sclerosis ("MS") so Eric, her primary caregiver and husband, escorted her through the Pavilion so they could walk home. Janet stumbled due to her MS and a CWMP employee, John Harshaw, saw her stumble and investigated. The Prims told Harshaw she had MS and that was why Janet was unsteady. Despite this,

CWMP employees grabbed plaintiffs against their wishes and forced them to a secluded room alleging public intoxication. Eric and Janet were not intoxicated. The multiple sclerosis was explained to the employees by Janet and Eric at the scene several times, but the employees summoned Montgomery County Sheriff Deputies who were working as employees of the CWMP to arrest them. The Prims also explained to the deputies that Janet suffers from multiple sclerosis and described its symptoms, but the deputies chose to arrest Janet and Eric despite being made aware of Janet's disability and its associated symptoms.

17.    On or about September 18, 2013, Montgomery County Sheriff Deputies Curry and Veith wrongfully arrested, attacked, and injured Tandra Baker during a routine wellness check related to Baker's special needs. As a result of the deputies' actions, Baker was forced to endure approximately 16 seizures that night alone. Mrs. Baker suffered severe pain and sought medical treatment for her broken jaw, broken teeth, hips, PTSD, lower back, neck, shoulders, seizures, sleeping disorders, left breast, index finger, scarring to her face and mouth, anxiety, headaches, nausea, depression, abdominal pain, ear pain accompanied by ringing, chest pain, fatigue, numbness in her extremities, loss of balance, weight change and sore throat. The injuries include: 1) Trauma to her left breast; 2) severe seizures; 3) extreme pain in her lower back, hip, neck and index finger; 4) broken jaw and teeth; and 5) emotional and mental issues stemming from the deputies' actions and subsequent criminal proceedings.

18.    On or about August 8, 2004, Montgomery County Sheriff's Deputy W. B. Rogers wrongfully arrested and beat a five-foot one-inch tall pregnant woman, Shavon Bass, during a routine traffic stop. All charges against her were dismissed shortly after.

19.    There have been many other false arrests and uses of excessive force by MCSO deputies indicating a pattern and practice. The Texas open records laws are weak and Plaintiff can only get most of these records through discovery.

## CAUSES OF ACTION

### DEFENDANT MONTGOMERY COUNTY
### 42 U.S.C. §1983: FOURTH AMENDMENT VIOLATIONS: FALSE ARREST/PROSECUTION WITHOUT PROBALE CAUSE/MEDICAL CARE

20.    Plaintiff reasserts all previous paragraphs as if fully set forth herein.

21.    The Fourth Amendment guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV*. Fourth Amendment violation are actionable under 42 U.S.C. Section 1983.

22.    Defendant Montgomery County violated Plaintiff's Fourth Amendment and Fourteenth Amendments rights, at least, when they were searched and detained him without probable cause or reasonable suspicion and arrested and falsely prosecuted him with malice without probable cause. The charges were dismissed and ended in Plaintiff's favor without any fine or other obligation.

23.    Defendant also failed to provide reasonable medical care to Plaintiff.

24.     Defendant County had no objectively reasonable belief that the arrest was lawful. The facts and circumstances as described above would not lead a prudent person to believe that an offense had been committed. The totality of circumstances in this case, viewed from the standpoint of an objectively reasonable police officer, would not and did not amount to probable cause.

25.     Defendant County did not have adequate written policies, or train or supervise the deputies properly such that they arrested Plaintiff without any probable cause and merely for speaking.

26.     Defendant County already has established a pattern and practice of arresting people without probable cause.

## DEFENDANT MONTGOMERY COUNTY
## 42 U.S.C. §1983: FIRST AMENDMENT FREEDOM OF SPEECH

27.     Plaintiff reasserts all previous paragraphs as if fully set forth herein.

28.     The First Amendment states that "Congress shall make no law [] abridging the freedom of speech" *U.S. Const. amend. I.* The First Amendment applies to Counties including when law enforcement officers retaliate against a person for speaking and is actionable under 42 U.S.C. Section 1983.

29.     Defendant Montgomery County violated Plaintiff's First Amendment rights, at least, when Plaintiff was subjected to force, and was searched and detained without probable cause or reasonable suspicion and arrested and falsely prosecuted him with

malice without probable cause. The charges were dismissed and ended in Plaintiff's favor without any fine or other obligation.

30.     Defendant County had no objectively reasonable belief that the arrest was lawful. The facts and circumstances as described above would not lead a prudent person to believe that an offense had been committed. The totality of circumstances in this case, viewed from the standpoint of an objectively reasonable police officer, would not and did not amount to probable cause.

31.     Defendant County did not have adequate written policies, or train or supervise the deputies properly such that they violated Plaintiff's First Amendment rights when they detained and arrested Plaintiff without any probable cause or reasonable suspicion and merely for speaking.

## DEFENDANT THE CENTER FOR THE PERFORMING ARTS AT THE WOODLANDS FALSE IMPRISONMENT

32.     Plaintiff reasserts all previous paragraphs as if fully set forth herein.

33.     The elements of false imprisonment are the following: (1) the defendant willfully detained the plaintiff, (2) the detention was without the plaintiff's consent, and (3) the detention was without legal authority or justification. *Wal-Mart Stores v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).

34.     Defendant's employees willfully detained Plaintiff as he was leaving the Center for the Performing Arts at The Woodlands. The MCSO deputies are agents and

under the control of The Center for the Performing Arts at The Woodlands and Live Nation and was acting as an employee of the Center for the Performing Arts at The Woodlands before, during, and after the false imprisonment of Plaintiff. Liability for false imprisonment can extend to (1) anyone who unlawfully arrests or detains another and (2) anyone who directs, requests, or participates in the arrest or detention. *Rodriguez*, 92 S.W.3d at 507. This extends liability to any employees/contractors of the Center for the Performing Arts at The Woodlands who participated in or directed the false imprisonment of Plaintiff, as well as extending vicarious liability to the employer, the Center for the Performing Arts at The Woodlands for wrongful detention or arrest made by an employee or agent acting within the scope of employment. *Wal-Mart Stores v. Odem*, 929 S.W.2d 513, 530 n.9 (Tex.App.-San Antonio 1996, writ denied). In order to impose liability upon an employer for the tort of its employee under the doctrine of respondeat superior, the act of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business for the accomplishment of the object for which the employee was hired. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied).

35.    The detention of Plaintiff was without their consent. Plaintiff was leaving and the deputies used physical force to detain Him.

36.    Defendant had no legal authority to arrest or detain Plaintiff.

37.    Damages recoverable in a false imprisonment claim include physical injuries as well as intangible injuries such as humiliation, shame, fright, and mental anguish. *Wal-Mart Stores v. Odem*, 929 S.W.2d 513, 527 (Tex.App.-San Antonio 1996, writ denied).

38.    Defendant deputies were acting as security guards for the Center for the Performing Arts at The Woodlands during the entirety of the exchange with Plaintiff.

39.    Plaintiff seekx actual damages for humiliation, shame, fright, and mental anguish arising from false imprisonment as well as attorney fees stemming from defending against false arrest. *Eans v. Grocer Sup. Co.*, 580 S.W.2d 17, 23 (Tex.App-Houston [1st Dist.] 1979, no writ). Plaintiffs also seek damages from The Center for the Performing Arts at The Woodlands under a theory of respondeat superior.

## ASSAULT BY OFFENSIVE PHYSICAL CONTACT

40.    Plaintiff reasserts all previous paragraphs as if fully set forth herein.

41.    The elements of a cause of action for assault by offensive physical contact are the following: (1) the defendant acted intentionally or knowingly, (2) the defendant made contact with the plaintiff's person, and (3) the defendant knew or reasonably should have believed that the plaintiff would regard the contact as offensive or provocative. Tex. Pen. Code §22.01(a)(3). The basis for an action for assault by offensive physical contact is the unpermitted or intentional invasion of the plaintiff's person, not the harm done to the plaintiff's body. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.1967). In an action for assault by offensive physical contact, the plaintiff can recover

actual damages for mental anguish even without showing physical injury. *Id*. In order to impose liability upon an employer for the tort of its employee under the doctrine of respondeat superior, the act of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business for the accomplishment of the object for which the employee was hired. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied).

42.    Defendant through its deputy agents intended to physically restrain Plaintiff.

43.    Defendant through its deputy agents made physical contact with Plaintiff.

44.    Defendant through its deputy agents knew or reasonably should have believed that Plaintiff would regard being physically restrained and have force used on Plaintiff as offensive or provocative.

45.    Defendant deputies were acting as security guardd for the Center for the Performing Arts at The Woodlands during the entirety of the exchange with Plaintiff.

46.    Plaintiff seek actual damages for assault by offensive physical contact from The Center for the Performing Arts at The Woodlands and Live Nation under the doctrine of respondeat superior.

## NEGLIGENCE and GROSS NEGLIGENCE

47.    Plaintiff reasserts all previous paragraphs as if fully set forth herein.

48.    The elements of a cause of action for negligence are the following: (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, and (3)

the breach proximately caused plaintiff's injury. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex.2009). In order to impose liability upon an employer for the tort of its employee under the doctrine of respondeat superior, the act of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business for the accomplishment of the object for which the employee was hired. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied).

49.   As security guards employed and/or controlled by The Center for the Performing Arts at The Woodlands and the MSCO deputies had a duty of ordinary care to not assault or falsely imprison patrons of the Center for the Performing Arts at The Woodlands. Defendant Center for the Performing Arts at the Woodlands had a duty to use ordinary care in supervising and/or training its employees. *Mackey v. U.P. Enters., Inc.*, 935 S.W.2d 446, 453 (Tex.App.-Tyler 1996, no writ).

50.   Defendant breached this duty by assaulting and falsely imprisoning Plaintiff. The Center for the Performing Arts at the Woodlands failed in its duty to use ordinary care in supervising and/or training its employees while they assaulted and falsely imprisoned Plaintiff.

51.   The harm of being assaulted and falsely imprisoned would not have happened, but for The Center for the Performing Arts at The Woodlands' negligent breach.

52.    Plaintiff seek actual damages as well as pre and post-judgment interest and court costs from The Center for the Performing Arts at The Woodlands under the doctrine of respondeat superior.

## NOTICE TO PRESERVE EVIDENCE

BY THE FILING OF THIS PUBLIC LAWSUIT AND PROVIDING SAME TO MONTGOMERY COUNTY, TEXAS AND THE CENTER FOR THE PERFORMING ARTS AT THE WOODLANDS THESE ORGANIZATIONS AND THEIR EMPLOYEES AND OTHER PERSONS ARE ON NOTICE, IF NOT BEFORE, THAT ALL VIDEOS, CHECK INS, PHOTOS, SIGN IN SHEETS, REPORTS, STATEMENTS, RECORDINGS, MEMOS, TEXTS, TELEPHONE RECORDS, AND OTHER MATERIALS OR POTENTIAL EVIDENCE IS TO BE PRESERVED AND NOT DESTROYED, SECRETED AWAY, OR ALTERED IN ANY WAY SO AS TO BE USED IN THIS INSTANT CIVIL ACTION. IF EVIDENCE IS NOT PRESERVED IT IS UNDERSTOOD A COURT MAY STRIKE THE PLEADINGS OF THE DEFENDANTS OR OTHER RELIEF MAY BE GRANTED.

## PUNITIVE DAMAGES

53.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

54.    The Center for the Performing Arts at the Woodlands is liable for punitive damages.

**ATTORNEY'S FEES**

55.    The Plaintiff is entitled to recover attorneys' fees and costs to enforce their Constitutional rights and under 42 U.S.C. Sections 1983 and 1988, from Defendants.

**JURY TRIAL**

56.    The Plaintiff demands trial by jury on all issues triable to a jury.

**PRAYER FOR RELIEF**

57.    WHEREFORE, Plaintiff requests that the Court:

A.    Enter judgment for Plaintiff against Montgomery County and The Center for the Performing Arts at The Woodlands jointly and severally;

B.    Find that Plaintiff is the prevailing party in this case and award attorneys' fees and costs, pursuant to federal law, as noted against defendant Montgomery County and The Center for the Performing Arts at The Woodlands, jointly and severally;

C.    Award damages to Plaintiff for the violations of his Constitutional rights claim;

D.    Award Pre- and post-judgement interest;

E.    Award Punitive damages against The Center for the Performing Arts at the Woodlands; and

F.      Order Montgomery County, Texas and The Center for the Performing Arts at The Woodlands to implement policies and train employees not to use excessive force and falsely arrest individuals; and

G.      Grant such other and further relief as appears reasonable and just, to which, Plaintiff shows himself entitled.

Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas No. 00790995
U.S. So. Dist. of Texas Bar No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone:  713/320-3785
FAX:        713/893-6737
E-mail:     attorneykallinen@aol.com

Alexander C. Johnson
KALLINEN LAW PLLC
State Bar of Texas No. 24123583
U.S. So. Dist. of Texas Bar No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573/340-3316
Fax:        713/893-6737
Email:      alex@acj.legal