| | | |
|---|---|---|
| **EDGAR MOSTI,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-CV-3378** |
| | § | **JURY TRIAL** |
| **MONTGOMERY COUNTY, TEXAS** | § | |
| **and THE CENTER FOR THE** | § | |
| **PERFORMING ARTS AT THE** | § | |
| **WOODLANDS** | § | |
| | § | |
| *Defendants.* | § | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS GREGORY TULLIS, CAITLIN ADAMS AND RAYMOND ADAMS AND BRIEF IN SUPPORT OF SAME

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Gregory Tullis, Caitlin Adams, and Raymond Adams (collectively "Defendants" or "Officers"), Defendants in the above-entitled and numbered cause, file this Motion for Summary Judgment, and in support thereof would show the Court as follows:

**Table of Contents**

**I.** .................................................................................................................................... 4

**SUMMARY OF CASE AND MOTIONS** ................................................................. 4

**II.** ................................................................................................................................... 5

**PROCEDURAL HISTORY** ...................................................................................... 5

**III.** .................................................................................................................................. 5

**SUMMARY JUDGMENT EVIDENCE** ................................................................... 5

**IV.** ..................................................................................................................................... 6

**FACTUAL BACKGROUND** ...................................................................................... 6

**V.** ......................................................................................................................................... 9

**STANDARD OF REVIEW** ........................................................................................ 10

**VI.** .................................................................................................................................... 12

**ARGUMENT & AUTHORITIES** ............................................................................. 12

   A.   PLAINTIFF'S CLAIMS ................................................................................. 12

   B.   THERE WAS NO CONSTUTIONAL VIOLATION BECAUSE PROBABLE CAUSE
EXISTED FOR PLAINTIFF'S  ARREST  .......................................................... 12

   C.   NO EXCESSIVE FORCE WAS USED ........................................................... 16

   D. NO 14TH AMENDMENT, MALICIOUS PROSECUTION OR 1ST AMENDMENT
VIOLATIONS ……………………….20

**VII** ……………………………………………………………………………………….23

**CONCLUSION** ………………………………………………………………………….23

**VIII** ……………………………………………………………………………………….23

**PRAYER** ……………………………………………………………………………….. 24

**Table of Authority/Cases**

490 U.S. at 1871-1872 ................................................................................................... 16

490 U.S. at 389.............................................................................................................. 16

Ahlers v. Schebil,
   188 F.3d 365 (6th Cir.1999) ...................................................................................... 17

*Albright v. Oliver,* 510 U.S. 266, 272 (1994) .............................................................. 22

*Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 256-257 (1986)................................... 10

*Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) ................................................................. 15
*Babb*, 33 F.3d 477 ..................................................................................................................... 15
*Babb*, 33 F.3d at 477 ................................................................................................................. 15
*Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) .................................................. 11
*Brothers v. Zoss*, 837 F.3d 513, 519 (5th Cir. 2016) ............................................................... 18
*Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) ............................................................... 23
*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ................................................................. 10
*Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir. 2009) ...................................................... 11
*Conn v. Gabbert,* 526 U.S. 286, 293 (1999) ............................................................................. 22
*County of Inyo,* 489 U.S. 593, 596 (1989) ................................................................................ 18
*Craig v. Martin*, 26 F.4th 699 (5th Cir. 2022) .......................................................................... 19
*Crane v. City of Arlington, Texas*, 50 F.4th 453 (5th Cir. 2022) .............................................. 12
Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) ........................................................... 16
Dist. of Columbia v. Wesby, ⸻ U.S. ⸻, 138 S. Ct. 577, 586, 199 L.Ed.2d 453 (2018) ....... 13
FED. R. CIV. P. 56 ........................................................................................................................ 10
FED. R. CIV. P. 56(c) ................................................................................................................... 10
*Gassner v. City of Garland*, 864 F.2d 394, 397 (5th Cir. 1989) ............................................... 15
*Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008) ... 11
*Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) ..................................................................... 15
*Gilbert v. French,*
    *aff'd*, 364 F. App'x 76 (5th Cir. 2010) ............................................................................... 21
Graham v. Connor ....................................................................................................................... 16
*Graham v. Connor*, 490 U.S. 386, 395 (1989) .......................................................................... 22
Graham v. Connor, 490 U.S. 386, 396 (1989) ...................................................................... 16, 19
*Graham,* 490 U.S. at 395 ........................................................................................................... 22
Griggs v. Brewer, 841 F.3d 308, 312 (5th Cir. 2016) ................................................................. 16
*Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016) ............................................................... 18
*Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) .................................................................. 20
Harlow v. Fitzgerald,
    457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ....................................................... 17
Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) .................... 13
*Harris v. Serpas*,
    745 F.3d 767 (5th Cir.2014) ............................................................................................... 17
*Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ............................................................................ 11
*Hunter v. Bryant*, 582 U.S. 224, 228 (1991) ............................................................................ 15
Illinois v. Gates, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) .................... 14
*Jacobson-Boettcher v. Dowdy*, No. 4:18-CV-853, 2021 WL 816241, at *2 (S.D. Tex. Mar. 3, 2021) ............................................................................................................................................ 18
*Koetter v. Davies,* 2010 WL 3791482 (D.Utah Sept. 22, 2010) ............................................... 17
*Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993) ..................................... 10
*Malley v. Briggs*, 475 U.S. 335, 341 (1886) ............................................................................ 15
*Mesa v. Prejean,* 543 F.3d 264, 273 (5th Cir.2008) ................................................................. 23
*Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005) ........................................................ 11
*Morris v. Pierce*, No. 07-cv-0080, 2008 U.S. Dist. LEXIS 70911, at *7 (W.D. La. Sep. 17, 2008) ............................................................................................................................................ 21
*Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) ......................................................... 11

*Morrow*, 917 F.3d at 874.................................................................................................... 11

*Nazarzadeh v. Harris County,*
   2010 U.S. Dist. LEXIS 101365 (S.D. Tex. Sep. 27, 2010) ..................................... 21

Osborne v. Harris Cnty, Tex., 97 F.Supp.3d 911, 923 (S.D. Tex. 2015)..................................... 13

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ......................................................................... 11

*Prim v. Stein*, 6 F 4th 584 (5th Cir. 2021)..................................................................................... 13

*Prim v. Stein*, 6 F.4th 584 (5th Cir. 2021)..................................................................................... 13

*Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) ......................................................... 11

*Ramirez v. Knoulton,*
   542 F.3d 124 (5th Cir.2008) ............................................................................................... 17

*Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002)........................................... 20

*Resendiz v. Miller*, 203 F3d 902, 903 (5th Cir. 2000) ................................................................. 13

*Russell v. Altom*, 546 F. App'x 432, 436 (5th Cir. 2013).............................................................. 23

*Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir. 1982).............................................................. 15

*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001) ............................................................... 19

*Saucier*, 533 U.S. at 205 .............................................................................................................. 19

*Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ............................................................................. 10

*Vasquez v. Chacon,*
   2009 U.S. Dist. LEXIS 129410 (N.D. Tex. Jun. 26, 2009) ................................................ 22

Wesby, 138 S. Ct. at 588............................................................................................................... 13

*Whatley v. Philo,* 817 F.2d 19, 20 (5th Cir. 1987)....................................................................... 12

*Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).................................................................. 20

*Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) .............................................................. 16

# I.
## SUMMARY OF CASE AND MOTIONS

This is a civil rights lawsuit in which the Plaintiff, Edgar Mosti ("Mosti"), alleges constitutional violations relating to an arrest and alleged use of force against him that occurred on June 9, 2023. Plaintiff brings Fourth, Fourteenth, and First Amendment claims against all of the Defendants. [Doc. 20, Plaintiff's First Amended Original Complaint, pp. 7-8]. Many of the allegations are blatantly contradicted by the video evidence and the deposition testimony of the Plaintiff. These Defendants are entitled to qualified immunity because the arrest of the Plaintiff was based on probable cause and, therefore, no constitutional violation occurred. In addition, the

*intended* use of force was minimal and reasonable under the circumstances or, at the very least, not every police officer would have known that the force used was a violation of clearly established law. The "trip" was not intended and, therefore, cannot be a constitutional violation. As a result, Defendants are entitled to judgment as a matter of law as to all of Plaintiff's claims.

## II.
## PROCEDURAL HISTORY

Plaintiff filed this case originally on September 10, 2023, against Montgomery County, Texas and The Center For The Performing Arts At The Woodlands ("CFTPA"). Plaintiff added these Officers in his First Amended Original Complaint filed on December 4, 2023. Plaintiff voluntarily dismissed co-Defendant, The Center for the Performing Arts at The Woodlands on October 11, 2024.  A Scheduling Order was entered by this Court on December 4, 2023. [Doc. 17]. This Motion is timely filed under the Scheduling Order.

## III.
## SUMMARY JUDGMENT EVIDENCE

In support of this Motion, Defendants incorporate herein the pleadings and other filings of Plaintiff on file with this Court.  The Summary Judgment proof filed in support of Defendants' Motion is attached and includes:

| | |
|---|---|
| **Exhibit 1** | Declaration of Gregory Tullis; |
| **Exhibit 2** | Declaration of Caitlin Adams; |
| **Exhibit 3** | Declaration of Raymond Adams; |
| **Exhibit 4** | Excerpts from the Deposition of Edgar Mosti |

| **Exhibit 5** | Part 1 of body worn camera video of Detective Tullis[1] (31,030 KB) |
| **Exhibit 6** | Part 2 of body worn camera video of Detective Tullis (154,546 KB); |
| **Exhibit 7** | Part 3 of body worn camera video of Detective Tullis (1,163,121 KB); |
| **Exhibit 8** | Body worn camera video of Detective Caitlin Adams (202,631 KB); |
| **Exhibit 9** | Body Worn Camera video of Detective Raymond Adams (517,351 KB; |
| **Exhibit 10** | Declaration of Expert Witness David Lopez and Exhibit A to same. |

## IV.
## FACTUAL BACKGROUND

On Friday, June 9, 2023, at approximately 9:45 p.m., Detective Tullis, who was working at a concert at the Cynthia Wood Mitchell Pavilion, observed the Plaintiff who, along with a female, was escorting a third person, another female, who appeared to be highly intoxicated. As Detective Tullis was approaching the North Gate of the facility, where he was assigned to work, he told the Plaintiff to escort his female companion to the North Gate and out of the venue because they appeared to be intoxicated. [Ex. 1, p. 2, para. 4; Ex 5 at 0:06 elapsed time to 0:33].

Plaintiff began yelling at Detective Tullis, but since there was an on-going concert at the venue, it was difficult to hear what the Plaintiff was staying. Detective Tullis observed the Plaintiff

---

[1] A thumb drive with all videos will be hand-filed with the District Clerk and hand-delivered to Judge Ellison's Chambers.

walking towards the exit, but the Plaintiff turned around several times appearing to argue and yell at Detective Tullis. Detective Tullis told them "You can't even walk, go, or you're going to go with me." [Ex. 1, p. 2, para. 5; Ex. 5 0:33 to 0:54].

Once outside the gate, the Plaintiff, rather than leave the venue as ordered, turned to stare at Detective Tullis and came back towards the gate. The Plaintiff appeared to be agitated. After a Cynthia Woods employee first went to meet the Plaintiff and tell him to leave, Detective Tullis approached the Plaintiff and detected a strong odor of alcohol and noticed his speech was slurred. Tullis asked him what he wanted and the Plaintiff said "To see the Sheriff." [Ex. 1, p. 3. para. 7; Ex. 6 beginning at 0:16].

Because Plaintiff had refused to leave the venue as ordered and Detective Tullis believed he was intoxicated and in violation of Section 49.02 of the Texas Penal Code, he made the decision to place the Plaintiff under arrest for Public Intoxication. Plaintiff straightened his arm and made it difficult to handcuff him. Two other Officers, Detective Caitlin Adams and Officer Raymond Adams, then approached to assist Detective Tullis to place the Plaintiff into handcuffs and were successful. Other than simply handcuffing Plaintiff no force was used. [Ex. 1, p.3, para. 8; Ex. 6, 0:35 to 1:11]

As the officers began walking Plaintiff to the security room, he was somewhat bent over at the waist and was walking unsteadily even with the assistance of Detective Tullis. [Ex. 6. 1:11 to 1:15]. Plaintiff pulled away and came close to making contact with Detective Caitlin Adams. Detective Tullis attempted to pull Plaintiff back towards him and they both lost their balance and fell to the ground. [Ex. 1, p. 3, para. 9; Ex. 2m p. 2, para. 6; Ex. 8 0:36 to 0:43]. Plaintiff hit his face on the pavement and suffered mild injuries. Although Plaintiff alleged he was then dragged to the Security Room the Body Cam footage actually shows that the Officers secured a wheelchair

to safely transport him to the Security Room.  Plaintiff refused to be cleaned up and refused medical care from an EMT from Montgomery County. [Ex. 7 1:27 to 9:25; Ex 4, p. 98].

In Plaintiff's First Amended Complaint, Plaintiff alleges that while walking the grounds at the concert venue, he and his wife and their friend were stopped and "rudely told" to leave the premises and that the officers used profanity.  [Doc. 20, p. 5, para 11.]  The Plaintiff alleges that he and his wife and their friend were not intoxicated and that when he criticized the three officers' behavior towards him, the officers "grabbed handcuffed [sic] [Plaintiff] with his arms behind his back and stated he was being arrested." [Doc. 20, p. 5, para 11-13.] Plaintiff claims the reason they were near the entrance/exit gate of the venue was because the Plaintiff's wife, whom he identified in his Complaint as Janet Prim, aged 57, was showing symptoms of her battle with multiple sclerosis ("MS") and they were going to walk home.  [Doc. 20, p. 6, para. 17.]. Plaintiff further states that Detective Tullis "purposefully caused [Plaintiff] to go face first onto the concrete floor" which caused him injury.  He stated that Detective Tullis knew or should know of the danger of having people in handcuffs and the possibility of injury due to not being able to break their fall. Plaintiff also asserts the "Defendants detained, arrested, used excessive force on, and denied medical care to Plaintiff merely for speaking."  [Doc. 20, p. 8, para. 25.]

The video evidence and deposition testimony of the Plaintiff paints a very different picture than what has been alleged in the pleadings.  The Plaintiff testified in his deposition that he, his wife, and a friend all arrived at the Cynthia Woods Pavilion at approximately 6:00 p.m. as the concert was starting.  [Ex. 4, p. 37]. He then stated that while he went straight to their seats, his wife and their friend purchased one (1) bottle of wine, and then joined him at their seats soon after. [Ex. 4, p.  45]. According to the Plaintiff, after only three (3) songs were played, the Plaintiff's wife exhibited signs that she was not feeling well.  [Ex. 4, p. 46]. He claimed that she only had a

small amount of one bottle of wine and he believed that maybe she had been drugged, or the wine was tampered with. [Ex. 4 p. 50, 105]. He also claims that he only had one beer before the concert at a late lunch, and that he had nothing to drink at the concert venue. [Ex. 4, p. 38, 48-49]. He stated that as soon as his wife exhibited signs that she was not well, they immediately got up to leave the venue. [Ex 4, p. 45-47].

The video evidence and the arrest report show that the Plaintiff was detained and arrested at approximately 9:45 pm, which is almost 4 hours after the Plaintiff claims he arrived at the venue and not merely after three (3) songs were played at the start of the concert at 6:00 p.m. Exs. 5 through 9]. Further, although the Plaintiff claims that his wife and their friend purchased one (1) bottle of wine and only had a small amount before they decided to leave, the receipts produced by the Plaintiff and the deposition testimony show that Plaintiff and his wife actually bought a total of three (3) bottles of wine. [Ex. 4, pp. 56-57]. At the time the trio did decide to leave the venue, they appeared very intoxicated. When Detective Tullis observed the Plaintiff and the two female companions leaving the venue, the Plaintiff slurring his words and making bizarre statements. [Ex. 1, p. 3, para. 7; Ex. 5, :30 to 35].

Plaintiff refused to be checked on by EMS. [Ex. 4, p. 98; Ex. 7, 1:27 to 9:25]. The Plaintiff never mentions his wife's MS, but rather he admits his wife had too much to drink. [Ex. 7 beginning at 21:55]. He also stated he had consumed at least one (1) bottle of wine on his own. [Ex. 7 beginning at 22:01].

In what can only be described as odd, the Plaintiff's wife who accompanied him to the venue on the night in question is Colleen "Lena" Mosti, not Janet Prim, and there is no mention in any report or the deposition testimony of the Plaintiff that Ms. Mosti suffers from MS. [Ex. 4, p. 61].

# V.
## STANDARD OF REVIEW

Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) The party seeking summary judgment bears the initial burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits, which the party believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Once the movant carries the burden set forth under *Celotex*, the burden shifts to the non-movant to show that summary judgment should not be granted. FED. R. CIV. P. 56. The party opposing a properly supported motion for summary judgment may not rest on mere allegations or a denial of pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 256-257 (1986). Unsubstantiated assertions that a fact issue exists will not suffice. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993).

As stated by the Supreme Court, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Moreover, a court should not rely "…on such visible fiction…" when a video contradicts a plaintiff's allegations. *Id*. at 381-82.

The doctrine of qualified immunity is an immunity from suit, not a mere defense to liability, and therefore should be decided at the earliest possible stage in litigation. *Hunter v. Bryant*, 502

U.S. 224, 227 (1991). A qualified immunity inquiry has two prongs: (1) whether the officers' conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). The court may exercise discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Morrow*, 917 F.3d at 874 (the court "can decide one question or both."). A constitutional right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008). Although qualified immunity is called an affirmative defense, the defendant asserting qualified immunity does not have the burden to establish it. Rather, it is the plaintiff whose burden it is to negate the assertion of qualified immunity, once it is raised. *Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir. 2009). ***An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law.*** See *Michalik  v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001)).

The plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id.* In other words, a plaintiff must satisfy her burden by negating immunity by specifically identifying evidence that rebuts the defendants' presumed

entitlement to dismissal based upon qualified immunity. *Whatley v. Philo,* 817 F.2d 19, 20 (5th Cir. 1987). A court is not bound to accept a plaintiff's version of the facts if contradicted by the video evidence. *Crane v. City of Arlington, Texas*, 50 F.4th 453 (5th Cir. 2022).

## VI.
## ARGUMENT & AUTHORITIES

### A.    PLAINTIFF'S CLAIMS

Plaintiff's First Amended Original Complaint alleges "Fourth, Fourteenth and First Amendment Violations Against All Defendants." [Doc. 20, pp. 7-8]. Plaintiff claims that the Officer Defendants "violated Plaintiff's Fourth Amendment and Fourteenth Amendments rights, at least, when he was searched and detained him [sic] without probable cause or reasonable suspicion and arrested and falsely prosecuted him with malice without probable cause. The Defendants used excessive force on Plaintiff." [Doc. 20, p. 7, para. 20]. Plaintiff also alleges that "Defendants also failed to provide reasonable medical care to Plaintiff" and that "Defendants had no objectively reasonable belief that the arrest was lawful. The facts and circumstances as described in [Plaintiff's First Amended Complaint] would not lead a prudent person to believe that an offense had been committed." [Doc. 20, pp. 7-8, para. 21-22].

Plaintiff further argues that his First Amendment Freedom of Speech rights were violated as "Defendants detained, arrested, used excessive force on, and denied medical care to Plaintiff merely for speaking." [Doc. 20, p. 8, para. 25].

### B.    THERE WAS NO CONSTUTIONAL VIOLATION BECAUSE PROBABLE CAUSE EXISTED FOR PLAINTIFF'S ARREST

A warrantless arrest must be predicated upon probable cause. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest

are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *Prim v. Stein*, 6 F 4th 584 (5th Cir. 2021) quoting *Resendiz v. Miller*, 203 F3d 902, 903 (5th Cir. 2000).

It is well established that even if officers lack probable cause for an arrest, qualified immunity will still protect officers from liability or civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See *Osborne v. Harris Cnty, Tex.*, 97 F.Supp.3d 911, 923 (S.D. Tex. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

A case oddly and coincidently exactly on point is the case of *Prim v. Stein*, 6 F.4th 584 (5th Cir. 2021) which also involved a husband and wife who were attending a concert at the Center for the Performing Arts at The Woodlands. In that case, the husband and wife, the Prims, were both arrested for public intoxication. The wife claimed she was not intoxicated rather it was her symptoms of MS that gave her the appearance of being impaired. The Prims were arrested pursuant to Texas Penal Code section 49.02(a) which prohibits individuals from appearing in a public place while intoxicated to the degree that they may endanger themselves or another. As in this instant case, Mr. Prim had difficulty standing, had bloodshot eyes, and his speech was slurred.

The question for the officers in the *Prim* matter, and the question here, was not whether the Prims were actually intoxicated, but whether the officers could reasonably infer that the Prims were intoxicated based on the totality of the circumstances. *See Dist. of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 586, 199 L.Ed.2d 453 (2018). As for Ms. Prim's argument that it was her MS symptoms that caused her to appear intoxicated, the Court ruled that "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *Wesby*, 138 S. Ct. at 588. On review, the Court asks "whether a reasonable officer could conclude—

considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a 'substantial chance of criminal activity.' " *Id.* at 588 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

In the instant case, the Officers had a reasonable belief that the Plaintiff in this case was intoxicated and posed an immediate risk of danger to himself or others and he was appropriately detained and arrested for public intoxication. [Ex 5 beginning at 16 second mark]. The only inference to the Plaintiff's wife suffering from MS came in his pleadings on file with the Court. Nowhere in the videos taken via Body Cam worn by the Officers or in the Plaintiff's deposition testimony did the Plaintiff ever state that his wife suffered from MS. Although the pleadings allege that the Plaintiff was not intoxicated, the Plaintiff admitted during his deposition that the receipts of purchase from the concert that evening show three (3) bottles of wine being purchased by either himself or his wife. [Ex. 4, Deposition of Plaintiff, p. 56]. Further, the video evidence at Ex 6 21:55-22:05 shows the Plaintiff admitting his wife had too much to drink and that he had consumed at least one (1) bottle of wine.

Here, all of the reasonableness considerations favor a conclusion that no constitutional violation occurred. During the interaction, prior to the Plaintiff being arrested, Detective Tullis repeatedly asked him to leave the venue with his companions. The Plaintiff became argumentative and refused to do as commanded and leave the premises, Detective Tullis got closer to the Plaintiff and noticed a strong odor of alcohol from the Plaintiff who was slurring his words and appeared to be intoxicated before, during and after the arrest. Under these circumstances, no constitutional violation occurred because probable cause existed for his arrest. *See*, *Prim*, at 588.

Moreover, if Plaintiff somehow argues that probable cause did not exist, qualified immunity shields governmental officials performing discretionary functions from liability unless

their conduct violates clearly established statutory or constitutional rights about which a reasonable person would have known. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). The protection afforded by the defense is "an immunity from suit not simply from immunity from liability." *Id*. Consequently, immunity must be resolved at the earliest possible stage of litigation since it entails an entitlement to immunity from suit and not merely a defense from liability. *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).

In suits that involve allegations of illegal arrest, qualified immunity is determined by whether or not a reasonable officer *could* have believed the arrest to be lawful in clearly established law and the information the officer possessed. *Babb*, 33 F.3d 477 (*emphasis added*). Even law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present, are entitled to immunity. The qualified immunity defense "gives ample room for mistakes in judgment, 'protecting all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 582 U.S. 224, 228 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1886). If police officers of reasonable competence could disagree on whether or not there was probable cause to arrest a suspect, immunity should be recognized. *Babb*, 33 F.3d at 477.

According to the Fifth Circuit, "[a]n officer on the beat is not expected to have and apply the knowledge of a constitutional scholar whose stock in trade is giving concrete application to lofty abstract principles…. Rather, we ask only that they act in accordance with that a reasonable officer 'should or should not know about the law he is enforcing.'" *Gassner v. City of Garland*, 864 F.2d 394, 397 (5th Cir. 1989) (quoting *Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir. 1982)). There is no case or series of cases that would give Detective Tullis fair notice that the arrest under these circumstances violated the constitutional rights of the Plaintiff. As a result, Detective Tullis,

Caitlin Adams and Raymond Adams are entitled to judgment as a matter of law as to the arrest claim.

## C.    NO EXCESSIVE FORCE WAS USED

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.' " *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court must evaluate the use of force by these officers "from the perspective of a reasonable officer on the scene," and not "with the 20/20 vision of hindsight." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). In *Graham v. Connor*, the Supreme Court identified three factors— the "*Graham* factors"—that courts should consider when assessing whether a particular use of force was reasonable: (1) the severity of the crime at hand, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to flee. *Id*. 490 U.S. at 389.

Here, the Plaintiff was repeatedly instructed to leave the premises and rather than do as instructed, he became increasingly belligerent, argumentative, threatening, and was obviously intoxicated.   When the Plaintiff refused Detective Tullis' commands he was rightly and appropriately placed under arrest.   The body cam footage shows a very intoxicated and belligerent Plaintiff who used racial slurs and was very combative.   "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 1871-1872. To avoid summary judgment on his excessive force claims, Plaintiff must provide some evidence that he sustained greater than *de minimis* injury which resulted directly and only from force that was clearly excessive to the need and objectively unreasonable. *See Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

To establish a Fourth Amendment excessive force claim, Plaintiff must show "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Harris v. Serpas,* 745 F.3d 767, 772 (5th Cir.2014) (quoting *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir.2008)).

To show a constitutional violation, a plaintiff must demonstrate that that "the defendant acted knowingly or intentionally to violate his or her constitutional rights, such that mere negligence or recklessness is insufficient." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815, (1982)).

The Supreme Court has been explicit about this requirement, instructing that a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo,* 489 U.S. 593, 596 (1989). Thus, "the Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct." *Id. See*, *Koetter v. Davies,* 2010 WL 3791482 at *5 (D. Utah 2010) ("[T]he Fourth Amendment prohibition on excessive force during arrest does not apply to unintentional or incidental applications of force.").

When the Plaintiff refused to obey the directive to leave the premises with his companions, Detective Tullis placed the Plaintiff under arrest. Once placed in handcuffs, and with the aid of two other Defendant officers, the Plaintiff was led to a holding area by Detective Tullis. When the Plaintiff pulled away and was brought back toward Detective Tullis, the Plaintiff and Tullis tripped and fell bringing both of them to the ground. There is simply no credible evidence that the fall was an *intentional* use of force. Tullis testifies in his Declaration *"Plaintiff appeared to stop suddenly which caused him to bump or nearly bump into Detective Caitlin Adams and as he started forward, he and I lost our balance and we both fell. I did not*

*"leg sweep" Plaintiff and did not intend for him to fall and certainly did not intend for me to fall. Plaintiff going to the ground at this point was not an intended use of force."* [Ex. 1, pp. 3-4, para. 9].

Plaintiff admitted in his deposition that he was only able to speculate that the fall was intended. [Ex. 4, p. 161]. In his deposition, Plaintiff claimed that he was dragged from the area of the fall to the security building and that he was refused medical treatment. After watching the body cam videos, Plaintiff had to admit that both claims were false. [Ex. 4, pp. 152-154].

Detective Tullis pulling the Plaintiff toward him and trying to get a strong grip on him to steady him, was not unreasonable. *Compare*, *Brothers v. Zoss*, 837 F.3d 513, 519 (5th Cir. 2016); and *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016). Further, because the fall was not intended, it cannot serve as the basis for a constitutional violation. *Brower v. County of Inyo,* 489 U.S. 593, 596 (1989). Thus, "the Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct."

In fact, it was the Plaintiff's intoxicated state that led him to cause his own injuries, not the actions of Detective Tullis. In *Jacobson-Boettcher v. Dowdy*, No. 4:18-CV-853, 2021 WL 816241, at *2 (S.D. Tex. Mar. 3, 2021), the Plaintiff, similar to this case, alleged false arrest and excessive force when she was arrested for public intoxication and was injured during her arrest. In *Jacobson*, the Plaintiff was drunk and fell while walking with the officers. "As they led her to the car, Jacobson-Boettcher continued to scream and resist their attempt to move her. On the way to the car, Jacobson-Boettcher tripped over her feet, falling to the ground and pulling the deputies to the ground with her in the middle of a driving lane in the parking lot." Under the *Graham* test, it was held that the jury could not reasonably find that there was excessive force used which was a violation of her constitutional rights. See *Graham v. Connor*, 490 U.S. 386,

396 (1989). Likewise, in the instant case, Detective Tullis was merely trying to gain control of an intoxicated subject who had gone toward Detective Caitlin Adams immediately prior to the fall.

Once again, Detective Tullis is entitled to qualified immunity with regard to the use of force claim. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), provides a clear roadmap for evaluating not only Plaintiff's excessive force claim, but also qualified immunity. Even under the Fourth Amendment standard, if an officer makes a reasonable mistake about the need for force, "the officer would be justified in using more force than in fact was needed." *Saucier*, 533 U.S. at 205. Here, Detective Tullis was justified in using some force, as he had to get the suspect under control and to the holding facility.

In *Craig v. Martin*, 26 F.4th 699 (5th Cir. 2022), Jacqueline Craig called the police after a neighbor grabbed her son's neck for littering. *Id.* at 702. Officer Martin responded, and Craig and Martin had a dispute. *Id.* at 702–03. One of Craig's daughters, J.H., grabbed her mother's arms during the dispute, and Martin pulled her aside. *Id.* at 703. Another of Craig's daughters, K.H., pushed into Martin, and Martin told the family to get on the ground, shoved Craig into the ground, and pulled Craig's arms behind her back. *Id.* Martin handcuffed Craig and walked over to J.H., grabbed her arm and the back of her neck, and put her on the ground. *Id.* When he tried to take Craig and J.H. to his vehicle, K.H. appeared and attempted to block access to the vehicle. *Id.* Martin struck the fourteen-year-old K.H. in the throat. *Id.* He also kicked J.H.'s leg as he placed her in the vehicle. *Id.* Finally, Martin went to arrest another of Craig's daughters, Brea Hymond, who had been filming the altercation. *Id.* Martin handcuffed Hymond and put her against his vehicle. *Id.* When she refused to answer his questions, Martin pulled her arms behind her back to force compliance, a maneuver Hymond claimed caused excruciating pain. *Id.*

The Fifth Circuit held that Martin was entitled to qualified immunity. Specifically, it held that Martin did not use excessive force because the plaintiffs' injuries were not significant, and the use of force was proportionate to the need given the resistance that Martin faced throughout the incident. Moreover, the court also found that even had Martin violated a constitutional right, such a right was not clearly established. If there was no constitutional violation on those facts, including the initial takedown of Craig and the compliance maneuver performed on Hymond, it is difficult to see how a clearly established violation could exist under the facts of this case.

**D.      NO FAILURE TO INTERVENE CLAIM EXISTS**

Plaintiff appears to assert a "failure to intervene" claim against Detectives Caitlin and Raymond Adams for failing to intervene to stop the force used by Detective Tullis. They are entitled to summary judgment on this claim because they had no notice of that the unintended fall might occur.

The Fifth Circuit has held that an officer can be liable under a Section 1983 theory, for failure to intervene, if the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002)). Here, there is no viable failure to intervene cause of action violation exists under these circumstances.

In *Hale v. Townley*, the Fifth Circuit held that a law enforcement officer "who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under [S]ection 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). However, the Court then  detailed the actual facts of that case which are entirely differently than the present case. Such acts were described as follows:

"Hale alleged that during the January 27, 1991 raid, Fant stood by and laughed as Fox slammed Hale against the car; rammed his fist into Hale's testicles; and repeatedly tried to slam Hale's head into the car. He also alleged that Stroud and Fant yelled encouragement at Fox."

*Id*. The *Hale* court held these acts are "sufficient evidence to create a genuine issue of material fact regarding [an officer's] acquiescence in the alleged use of excessive force." *Id*.

There is nothing remotely close to the facts in *Hale* in the present case. The first use of force happened at the handcuffing and no excessive force was used. The second event, was the fall and the third was the Officers sitting the Plaintiff back up after the fall. The Video provides clear evidence that there was no maliciousness or gratuitous violence.

Although the Fifth Circuit in *Hale* did not specify a duration of time that would be considered reasonable to recognize an alleged excessive nature of force, several courts have analyzed the timing issue, and in applying such holdings it is clear that Officer Early did not have had a reasonable opportunity to recognize and intervene in the use of allegedly excessive force.

The Western District of Louisiana, in *Morris v. Pierce*, held that failure to intervene liability was not an available remedy because there was no evidence to suggest that the officer had a reasonable opportunity to intervene in a struggle that lasted ten to fifteen seconds. *Morris v. Pierce*, No. 07-cv-0080, 2008 U.S. Dist. LEXIS 70911, at *7 (W.D. La. Sep. 17, 2008). Similarly, a district court in Texas determined there was no indication that an officer could have intervened to prevent the use of excessive force that occurred within a few seconds. *Gilbert v. French*, 2008 U.S. Dist. LEXIS 10193, at *27 (S.D. Tex. Feb. 12, 2008) *aff'd*, 364 F. App'x 76 (5th Cir. 2010); *See also*, *Nazarzadeh v. Harris County,* 2010 U.S. Dist. LEXIS 101365, at *96 (S.D. Tex. Sep. 27, 2010) (holding that, even assuming that defendants witnessed the use of force, "there is no basis to conclude that those jailers had a reasonable opportunity to assess the situation and intervene,"

given that "alleged use of excessive force lasted less than one minute"); *Vasquez v. Chacon*, 2009 U.S. Dist. LEXIS 129410, at *7 (N.D. Tex. Jun. 26, 2009) ("[T]he short duration of alleged excessive force did not provide [defendant] with a reasonable opportunity to intervene").

Detectives Caitlin Adams and Raymond Adams are entitled to judgment as a matter of law as they did not use excessive force nor can they be liable for failure to intervene under these circumstances.

**E.      NO 14th AMENDMENT, MALICIOUS PROSECUTION OR 1st AMENDMENT CLAIMS EXIST**

When a provision of the Constitution "provides an explicit textual source of Constitutional protection, a court must assess a plaintiff's claim under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999), quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989). It has been consistently held that allegations that a law enforcement officer has used excessive force in the course of an arrest, investigatory stop, or other seizure the case must be analyzed under the Fourth Amendment's reasonableness standard, rather than a Fourteenth Amendment substantive due process approach. *Graham*, 490 U.S. at 395. The Plaintiff's alleged claims for excessive force pursuant to the Fourteenth Amendment must be dismissed as not legally cognizable.

Further, the Supreme Court of the United States in modern times has reserved the protections of substantive due process to matters relating to marriage, family, procreation, and the right of bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272 (1994). The Fourteenth Amendment was drafted to protect matters of pretrial deprivations of liberty. *Id.* at 274.  An unlawful detention

claim cannot fall under the umbrella of a violation of substantive due process. Plaintiff's claims for detention brought pursuant to the Fourteenth Amendment must also be dismissed.

Plaintiff also vaguely references a malicious prosecution cause of action. As this Court is likely aware, there is a very real question in the Fifth Circuit as to whether a Section 1983 malicious cause of action even exists. *See*, *Castellano v. Fragozo,* 352 F.3d 939 (5th Cir. 2003). But, if it does exist, it most certainly includes a lack of probable cause as an element. Because Defendants have already established that there was probable cause for Plaintiff's arrest, Defendants have also successfully defeated Plaintiff's malicious prosecution claim, if any. By establishing probable cause, any claimed lalicious prosecution claim is extinguished.[2]

Finally, Plaintiff brings a First Amendment claim alleging he was arrested for what he was saying. [Doc. 20, p. 8]. However, once again, Plaintiff's First Amendment claim requires an absence of probable cause to support the arrest. *See, e.g., Mesa v. Prejean,* 543 F.3d 264, 273 (5th Cir.2008) ("If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment."); *Russell v. Altom*, 546 F. App'x 432, 436 (5th Cir. 2013) (if probable cause for the arrest exists there can be no viable First Amendment claim).

The same probable cause analysis discussed earlier is applicable and Plaintiff's First Amendment claim should be dismissed as a matter of law.

## VII.
## CONCLUSION

---

[2] Plaintiff did not plead the elements of a malicious prosecution claim – he merely states in his Second Amended Original Complaint "[t]hey then *maliciously prosecuted* him until his case was dismissed." [Doc 20, p. 7, para. 20].

For all of the foregoing reasons, Defendants are entitled to judgment as a matter of law in this matter as to all of Plaintiff' claims.

## VIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice. In addition, Defendants pray for all such further relief that they may show themselves justly entitled.

Respectfully submitted,

*/s/ STEVEN D. SELBE*
STEVEN D. SELBE
ATTORNEY IN CHARGE
So. Dist. No.: 18003
SBN: 18004600
sselbe@gordonrees.com

**ATTORNEYS FOR DEFENDANTS**

OF COUNSEL:

GORDON REES SCULLY MANSUKHANI, LLP
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 490-4863 – Telephone
(713) 961-3938 – Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on the 18th day of November, 2024, and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfies the requirements of Fed. R. Civ. P. 5(b)(2)(D).

*/s/ STEVEN D SELBE*